THIGPEN, Judge.
This is a termination of parental rights case.
After several motions and hearings regarding the custody of B.A.S., a minor child (child), and after reacquiring custody of the child, the birth mother, M.J.S. (mother), placed the child with Catholic Social Services (Catholic), for purposes of adoption. In the summer of 1992; Catholic filed a petition to terminate the parental rights of the mother and three possible fathers. Thereafter B.S., the maternal great-grandmother (great-grandmother), and G.S., her husband (step great-grandfather), filed a petition for permanent custody of the child and for the termination of the parental rights of the mother.
Following various motions and interlocutory orders, an ore tenus proceeding was held on October 30, 1992. Thereafter, the trial court found that the child was dependent, it terminated the parental rights of the mother and the three named possible fathers, and it denied the great-grandmother and step great-grandfather’s petition for custody. Hence, this appeal.
Parental rights may be terminated when a trial court finds from “clear and *683 convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child.” Ala. Code 1975, § 26-18-7(a); L.W. v. State Department of Human Resources, 591 So.2d 872 (Ala.Civ.App.1991). Additionally, when a nonparent (including the State) is the petitioner, the trial court must apply a two-pronged test in determining whether to terminate parental rights. The trial court must establish that the child is dependent; and, upon a finding of dependency, the trial court must determine that there are no other viable alternatives to termination of parental rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990). Further, a trial court’s decision in proceedings to terminate parental rights is presumed correct when ore tenus evidence was presented, as here, and its decision will be set aside only if the record reveals the decision to be plainly and palpably wrong. M.J.G.L. v. State Department of Human Resources, 587 So.2d 1004 (Ala.Civ.App.1991).
The great-grandmother contends that the trial court erred by allowing an investigating social worker employed by DHR to testify that, based upon her investigation, an allegation of child sexual abuse of the child directed against the step great-grandfather was founded.
The facts pertinent to this case reveal that after the death of her mother (grandmother), the mother came to live with the great-grandmother and the step great-grandfather, when she was approximately fourteen years of age. The great-grandmother was appointed as guardian for the mother and administered certain monies for the benefit of the mother, which resulted from the grandmother’s death. The mother quit school at the age of sixteen years and later became pregnant out of wedlock. The child was born in 1990, and since his birth, custody has alternated between the mother, and the great-grandmother and step great-grandfather, who at one time obtained temporary custody from the juvenile court. The mother sought and regained custody, and she later sought to place the child with Catholic for adoption.
Following the filing of various custody and termination of parental rights petitions, a home study evaluation of the great-grandmother revealed that the great-grandmother and the step great-grandfather were self-employed in the shrimping industry; that the great-grandmother was 55 years of age, had only one kidney, which did not function well, and that she had pins in her legs as a result of an accident. The step great-grandfather was 60 years of age. The current marriage was the third marriage for both of them. There was testimony that previous to her present marriage, the great-grandmother married at the age of seventeen, and that marriage produced three children. Later, the great-grandmother gave birth to two other children out of wedlock by different fathers. She then remarried in 1965 for a short time, giving birth to her sixth child.
The great-grandmother’s first child, the grandmother, became pregnant out of wedlock. A home study performed by a social worker indicated that the great-grandmother claimed that “she was working long hours and away from home and did not realize what her daughter was doing until it was too late.” That study also indicated that the great-grandmother’s second child died at the age of five weeks; that one of the great-grandmother’s children was in prison, serving time for robbery; that another of her children was relinquished for adoption to the great-grandmother’s childless aunt and uncle because the great-grandmother felt that she was unable to cope with the child’s speech impediment; that another child died of a broken neck at the age of seventeen, diving off a fishing pier; and that another child, although married, had two children, had been chronically unemployed, and had lived intermittently with the great-grandmother most of his life. The great-grandmother admitted that during the time the mother lived with her, on two occasions, the mother was allowed to have her boyfriends live in the house with the family. Further, following the grandmother’s accidental death, the great-grandmother, as guardian of the mother, received Social Security payments for approximately four years, monies from a life insurance policy in the amount of $20,000, and approximately $7,000 from the settlement of a lawsuit resulting from the grandmother’s death. The evidence *684 reflects that the great-grandmother spent some of this money personally, that she lent part of it to others during the period of her guardianship, and that she could not account for a significant amount spent during the guardianship. When the guardianship was closed, she remitted some of the proceeds to the mother. Current financial analysis reveals that the great-grandmother and the step great-grandfather have a minimal income and that they receive food stamps to supplement their income.
The evidence further disclosed that during the period of their custody, the great-grandmother and the step great-grandfather kept the child with them on their shrimp boat for a period of several weeks while fishing.
The mother testified that she was sexually molested by the step great-grandfather during the time she lived with them and that she did not want them to have custody of the child. Based upon the child’s condition and behavior, an investigating social worker testified that she found the allegations of child sexual abuse against the step great-grandfather to be “founded.”
The caseworker from DHR expressed her concern for the child’s future stability should custody be awarded to the great-grandmother because of the great-grandmother’s lack of success with her own children, none of whom finished high school, and her conflict with the mother.
In proceedings, such as here, the factors which the trial court may consider in determining whether to deny alternative custody to a relative of the parent are age, health, financial condition and the child’s retention in the same environment. Clark v. State Department of Human Resources, 545 So.2d 797 (Ala.Civ.App.1989). Were custody to devolve upon the great-grandmother, it is abundantly clear that the child would be raised in the same environment which produced the turmoil in the life of the mother, the grandmother, and the mother’s aunts and uncles.
We thus find that clear and convincing evidence supported the trial court’s determination in terminating the parental rights of the mother, and in determining that the great-grandmother was not a viable alternative for custody. Considering the evidence and reports of the great-grandmother’s lack of success in rearing her own children, and now the child, born out of wedlock to the mother while the mother was in the custody of the great-grandmother, we cannot say that the trial court’s decision is plainly and palpably wrong. Thus, even if the trial court erred in allowing the social worker to testify that the allegation of sexual abuse was “founded,” it is well established in Alabama that a judgment will not be reversed for improper admission of evidence, unless, after an examination of the entire evidence in the case, it is clear that the evidence complained of substantially affected the rights of the complaining party. Rule 45, A.R.App.P.
Based upon the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
The award of attorney fees requested by both parties is denied.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.